E-FILED
Monday, 02 July, 2007 10:19:01 AM
Clerk, U.S. District Court, ILCD

FILED
JUL ★ 2007
2 TP
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Gerald M. Aswege
Reg. No. 13340-026
Federal Prison Camp
P. O. Box 1000
Leavenworth, KS 66048-1000

**In Pro Se**

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>v.<br><br>GERALD M. ASWEGE,<br><br>Defendant/Petitioner. | Case No. 4:04-CR-40073-MMM<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR WRIT OF CORAM NOBIS PURSUANT TO 28 U.S.C. § 1651(a) |

COMES NOW Petitioner/Defendant, **Gerald M. Aswege** (hereinafter "Aswege"), in pro se, currently incarcerated, and hereby files his Memorandum of Points and Authorities in Support of his Petition for Writ of Coram Nobis, whereby he presents three claims of violation of his constitutional rights in the process that culminated in the entry of judgment of forfeiture pursuant to 21 U.S.C. § 853.

Factual and Procedural Background

On August 19, 2004, a three-count Indictment was filed in the U.S. District Court for the Central District of Illinois charging Aswege with conspiracy to possess with intent to

distribute and distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846 (Count One); possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count Two); and criminal forfeitures pursuant to 21 U.S.C. § 853(a) (Count Three). CR-5. $\underline{1/}$

On May 5, 2005, pursuant to a written plea agreement, Aswege entered guilty pleas to counts one and two of the Indictment. Transcript of the Change of Plea Hearing, CR-40. Although no change of plea was entered in the criminal forfeitures count, as part of the plea agreement Aswege agreed to waive his right to a jury trial in that count. **Ibid**.

On September 22, 2005, Aswege was sentenced to serve concurrent sentences of 70 months for each count of conviction, followed by four years of supervised release. Transcrips of the Sentencing Hearing. CR-44.

After the guilty pleas, negotiations began to settle the criminal forfeitures count. Between May and October of 2005, the Government made three separate offers to settle the remaining count. On May 25, 2005, the Government sent Aswege's attorney, Ted Breckenfelder (hereinafter "Breckenfelder"), an offer whereby Aswege would forfeit his 2002 Chevrolet Tahoe ("Tahoe") and 2004 Chevrolet Silverado ("Silverado"), and $75,000 in cash to settle the forfeiture count. Exhibit A.

---

$\underline{1/}$   CR means Clerk's Record and refers to the record in case No. 4:04-CR-40073-MMM. Where reference is made to the Clerk's Record in Aswege's collateral attack of his sentence, the "CR" entry is followed by the case number in parenthesis.

Breckenfelder's Billing Statement does not reflect a response to this offer. Exhibit B at 6-9. However, in letter received by Breckenfelder on or about July 15, 2005, Aswege instructed Brekenfelder to offer the Government the Tahoe and $60,000 in cash. Exhibit C. See also Exhibit B at 7, entry of 09/15/05.

On or about August 11, 2005, the Government verbally communicated to Breckenfelder a new offer to settle the forfeitures count. Exhibit B at 8, entry of 08/11/05. On August 25, 2005, Breckenfelder sent the Government a counteroffer whereby Aswege agreed to forfeit the Tahoe and $50,000 in cash. Exhibit D. In letter/fax dated September 2, 2005, the Government acknowledged receiving the August 25, 2005, counteroffer, and formally extended the offer verbally tendered on or about August 11, 2005. Exhibit E. In this second offer, the Government proposed to settle the forfeiture count in exchange for the two vehicles and $65,000 in cash. **Ibid.** Because sentencing was scheduled to take place on September 22, 2005, the Government set a deadline of September 13, 2005, for the offer, and advised Breckenfelder that if the offer was not accepted by the deadline "the government will proceed to the forfeiture hearing and forfeit all assets at issue to the fullest extent provided by law." **Ibid.** On September 14, 2005, the Government extended the dealine for the offer until September 15, 2005. Exhibit F.

On September 28, 2005, Breckenfelder faxed a counteroffer to the Government, whereby Aswege would agree to forfeit the Silverado and $50,000 in cash. Exhibit I. The same day, the Government faxed Breckenfelder rejecting the counteroffer.

Exhibit J. On October 6, 2005, Breckenfelder faxed a new counteroffer, whereby Aswege proposed to forfeit the two vehicles and $30,000 in cash. Exhibit M. In fax dated October 11, 2005, the Government rejected the counteroffer. Exhibit O.

On October 12, 2005, the Government made a final offer to settle the forfeitures count. The Government verbally offered a settlement whereby Aswege would forfeit the two vehicles and $75,000 in cash. Exhibit B at 12, entry of 10/12/05. This offer was valid until the closing of business, the same day. **Ibid.**

On hearing held on October 13, 2005, this Court ordered forfeiture of land, the Silverado, and $88,000 in cash. Preliminary Order of Forfeiture. CR-49. Criminal Judgment was entered on October 31, 2005, CR-51, and Final Order of Forfeiture was entered on March 23, 2005. CR-81.

No notice of appeal was filed for the judgment entered on October 31, 2005, although a notice of appeal was filed on March 28, 2006, for the forfeitures count. CR-82. However, on defense motion, the appellate court dismissed the appeal, as the notice was untimely. CR-85.

On July 24, 2006, Aswege filed with this Court a pro se Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. CR-1 (06CV4047). In that motion Aswege made several allegations of ineffective assistance of counsel during the forfeiture proceedings. **Ibid.** On September 7, 2006, this Court dismissed Aswege's section 2255 motion. CR-6 (06CV4047). On order dated February 7, 2007, this Court denied Aswege's Application for Certificate of Appealability. CR-14 (06CV4047).

Argument

This petition relates to Count Three of the Indictment, the Criminal Forfeitures Count, 21 U.S.C. § 853(a). CR-5. More specifically, Aswege claims that his attorney, Ted Breckenfelder, rendered constitutionally deficient assistance in violation of the Sixth Amendment, resulting in Aswege's prejudice.

The Writ of Coram Nobis

Under the All Writs Act, 28 U.S.C. § 1651, a court is authorized to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (2007).

In 1946, with the enactment of Fed.R.Civ.P. 60, the writ was abolished for civil actions. **United States v. Morgan**, 346 U.S. 502 (1954). However, the writ survives in the criminal-law context, **United States v. Balistrieri**, 606 F.2d 216, 219 (7th Cir. 1979), therefore, it "is available in a criminal proceeding and is of the same general character as . . . relief under 28 U.S.C. § 2255," **United States v. Scherer**, 673 F.2d 176, 178 (7th Cir. 1982); **Howard v. United States**, 962 F.2d 651, 653 (7th Cir. 1992), although, unlike motions under section 2255, Coram Nobis "is a step in the criminal case." **Morgan, supra**, 346 U.S. at 506 n.4, citing **Kurtz v. Moffitt**, 114 U.S. 487, 494 (1885).

Since a criminal forfeiture "is an in personam proceeding against a defendant in a criminal case and is imposed as a sanction against the defendant upon his conviction," **United**

States v. Moya-Gomez, 860 F.2d 706, 721 n.15 (7th Cir. 1988); United States v. Libretti, 415 U.S. 29, 38-39 (1995), Coram Nobis is available to challenge a criminal forfeiture judgment. **Pasha v. United States**, 484 F.2d 630, 632-33 (7th Cir. 1973); see also **United States v. Mischler**, 787 F.2d 240, 241 n.1 (7th Cir. 1986) (restitution).

The Supreme Court has held that the writ is "available for review of a criminal conviction when §2255 d[oes] not apply," **Balistrieri, supra,** 606 F.2d at 219, that is, when the petitioner's "statutory remedies are unavailable or inadequate." **United States v. Darnell**, 716 F.2d 479, 481 n.4 (7th Cir. 1983).

In his section 2255 motion Aswege presented ineffective assistance of counsel claims in relation to the criminal forfeiture proceedings. CR-1 (06CV4047). Although this Court didn't address Aswege's forfeiture-related claims when denying the motion, in the order denying Aswege's Application for Certicate of Appealability, CR-14 (06CV4047), this Court stated that "[a]ny challenge to the forfeiture order would need to be brought in the criminal proceeding." **Id.** at 4. This is the case because section 2255 explicitly states that jurisdiction under that section extends only to prisoners "claiming the right to be released," 28 U.S.C. § 2255 (2007), and challenges to a criminal forfeiture judgment don't present a claim for early release. See also **United States v. Ramsey**, 106 F.3d 404 (7th Cir. 1997) (unpublished).

Although the claim could have been brought on direct appeal, 18 U.S.C. §§ 3557 and 3742, a claim of ineffective assistance of

counsel, if not fully developed, as in this case, must be presented in a collateral action. **United States v. Spence**, 450 F.3d 691, 694 (7th Cir. 2006), citing **Massaro v. United States**, 538 U.S. 500, 504 (2003). 2/

Under the facts presented in this case, section 2255, Aswege's primary statutory remedy, is 'unavailable or inadequate' to adjudicate Aswege's claim that his attorney rendered constitutionally deficient assistance during the criminal forfeiture proceedings. Furthermore, Aswege has had no unobstructed opportunity to obtain a judicial determination of his ineffective assistance of counsel claims with regards to the criminal forfeiture proceedings, therefore, Coram Nobis is available under the facts and circumstances of this case.

## Relief Under Coram Nobis

In order to obtain relief under Coram Nobis, Aswege must prove the existence of an error in the proceedings "of the most fundamental character," **United States v. Dellinger**, 657 F.2d 140, 144 n.9 (7th Cir. 1981), citing **Morgan, supra**, 346 U.S. at 512, because Coram Nobis "is an extraordinary remedy" reserved for those fundamental errors that have "render[ed] the proceeding itself irregular and invalid." **Scherer, supra**, 673 F.2d at 178, citing **United States v. Addonizio**, 442 U.S. 178, 186 (1979); **United States**

---

2/ Breckenfelder did not file a notice of appeal. Attorney Donovan Robertson, who replaced Breckenfelder, did file the notice, CR-82, however, it was filed late. CR-85.

States v. Mayer, 235 U.S. 55, 69 (1914).

### The Ineffective Assistance of Counsel Claims

As above stated, a criminal forfeiture is part of a defendant's criminal case. **Moya-Gomez, supra,** 860 F.2d at 721 n.15; **Libretti, supra,** 516 U.S. at 38-39. As such, a criminal defendant in a criminal forfeiture proceeding has a constitutional right to effective assistance of counsel under the Sixth Amendment. **Moya-Gomez, supra,** 860 F.2d at 725.

In order to prove that his attorney rendered constitutionally deficient assistance, Aswege must first "prove that his counsel's performance 'fell below an objective standard of reasonableness,'" **United States v. Febus,** 218 F.3d 784, 794 (7th Cir. 2000), citing **Strickland v. Washington,** 466 U.S. 668, 688 (1984), that is, Aswege must prove that "in light of all circumstances, the identified acts or omissions were outside the wide range of professional competent assistance." **Bedelle v. Correll,** 452 F.3d 648, 663 (7th Cir. 2006), citing **Strickland, supra,** 466 U.S. at 690. However, counsel's performance must be "evaluated from counsel's perspective at the time of the alleged error in light of all circumstances, and the standard of review is highly deferential." **Hartjes v. Endicott,** 456 F.3d 786, 790 (7th Cir. 2006), citing **Kimmelman v. Morrison,** 477 U.S. 365, 381 (1986). Second, Aswege must establish that "but for counsel's deficiency, there is a reasonable probability that the outcome would have been different." **Febus, supra,** 218 F.3d at 794, citing **Strickland,**

supra, 466 U.S. at 694. A 'reasonable probability' is "a probability sufficient to undermine confidence in the outcome." Badelle, supra, 452 F.3d at 662, citing Strickland, supra, 466 U.S. at 694.

## The Settlement Offers

After Aswege's guilty pleas, settling the first two counts of the three-count Indictment, the Government made three separate offers to settle the remaining forfeitures count. The first offer was made on May 25, 2005, in a letter to Breckenfelder. The Government proposed a settlement whereby Aswege would forfeit to the Government his Tahoe and Silverado, and $75,000 in cash. Exhibit A. Breckenfelder's billing statement does not indicate a reply to this offer. Exhibit B at 6-9. However, on or about August 11, 2005, in a telephone conversation with the Government's counsel, Breckenfelder received a second offer, Exhibit B at 8, entry of 08/11/05. In response to the verbal offer, a counteroffer was made on letter dated August 25, 2005, whereby Breckenfelder proposed that his client forfeit the Tahoe and $50,000 in cash. Exhibit D.

The only information that Aswege received about the August 11, 2005, settlement offer came as an attachment to a letter from Breckenfelder to Aswege dated August 25, 2005. The attachment, a copy of the letter addressed to the Government's counsel, also dated August 25, 2005, confirms the "last exchange of settlement offers." Exhibit D. In the letter, Breckenfelder states that he

"understands the government's present counteroffer to be $65,000 in cash plus the Tahoe and Silverado." **Ibid.**

In fax/letter dated September 2, 2005, the Government acknowledged receipt of the counteroffer of August 25, 2005, however, the Government restated its verbal offer of August 11, 2005, that Aswege forfeit the two vehicles and $65,000 in cash. Exhibit E. Additionally, the Government set an offer-deadline of September 13, 2005, just nine days before Aswege's sentencing hearing on September 22, 2005. **Ibid.** The Government also advised that if the offer was not accepted "the government will proceed to the forfeiture hearing and seek to forfeit all assets at issue to the fullest extent provided by the law." **Ibid.** This offer was not transmitted to Aswege. Declaration of Aswege at 3, ¶13; Exhibit B at 9.

In failing to inform Aswege about the September 2, 2005, offer, Breckenfelder also failed to inform Aswege of the offer deadline and of the Government's intention to seek to forfeit "all assets at issue" if the offer was not accepted by the deadline.

On September 14, 2005, at Breckenfelder's request, the Government extended the offer deadline to September 15, 2005, Exhibit F. On September 15, 2005, Aswege called Breckenfelder. Exhibit B at 9, entry of 09/15/05. Breckenfelder's billing statement does not reflect that he discussed with Aswege the outstanding offer, nor that he told Aswege of the offer's conditions,

///
///
///

-10-

including the deadline. **Ibid.** 3/ In fact, Aswege did not learn about the September 2, 2005, offer until recently, when he received copy of that offer. Declaration of Aswege at 3, ¶14.

Although Aswege could find no case law analyzing an attorney's failure to inform his client of a criminal forfeiture settlement offer, the process, its implications, and consequences are similar to those of an attorney's failure to communicate to his client the tendering of a plea agreement offer. In fact, both situations involve the same constitutional safeguards: the right to effective assistance of counsel under the Sixth Amendment and the right to due process under the Fifth Amendment.

Where counsel fails to inform his client of a Government's plea agreement offer, ineffective assistance of counsel, in violation of the Sixth Amendment, has been found. **Johnson v. Buckworth**, 793 F.2d 898, 902 (7th Cir.), cert. denied, 479 U.S. 937 (1986); **Griffin v. United States**, 330 F.3d 733, 737 (6th Cir. 2003). By analogy, in light of the seriousness of the consequences and of the constitutional violations, the same result must be reached where counsel has failed to inform his client of the tender of an offer to settle a criminal forfeiture. Here, Breckenfelder failed to inform Aswege of the second offer and its conditions.

During this period of time, the weeks that preceded Aswege's

---

3/ Between the arrival of the September 2, 2005, offer and the deadline on September 15, 2005, Breckenfelder's detailed billing statement shows no effort by him to communicate with Aswege. Moreover, on September 15, 2005, it was Aswege who called Breckenfelder. Exhibit B at 9, entry of 09/15/05.

sentencing hearing, the relationship between Aswege and Breckenfelder became extremely strained, and this led to a complete breakdown in communications between them. Exhibit B at 9, entry of 09/15/05, and at 12, entry of 10/12/05; Exhibit G. This eventually resulted in Breckenfelder's Motion to Withdraw and an in camera hearing. Minute Entry of September 22, 2005. 4/

Although a breakdown in communications existed at the time of the Government's second settlement offer was made, it did not relieve Breckenfelder from communicating the offer, and more importantly, from informing Aswege of the urgency of a decision, as the deadline would cut-off any possibility of a settlement agreement. 5/

As result of Breckenfelder's failure to communicate the offer, in light of the surrounding circumstances, Breckenfelder's performance "fell below an objective standard of reasonableness." **Strickland, supra**, 466 U.S. at 688.

However, in order to obtain relief, Aswege also "must establish through objective evidence that there is a reasonable probability that, but for counsel's [omissions], he would have accepted the [offer]." **Toro, supra**, 940 F.2d at 1068, citing **Strickland, supra**, 466 U.S. at 694.

---

4/ The arguments between Aswege and Breckenfelder became so violent that on one occasion the Mercer County Sheriff Deputies had to intervene.

5/ Although the Government made one additional offer, at the time of the second offer, it was the Government's expressed intention to proceed to the forfeitures hearing if the offer was not accepted.

As early as Aswege's letter reviewed by Breckenfelder on July 15, 2005, Aswege expressed his willingness to settle the forfeitures count. Exhibit C; Declaration of Vescolani at 1, ¶¶ 3-4. In his October 18, 2005, letter, Aswege told Breckenfelder that had Aswege been timely informed of the Government's position, the forfeiture would "have been resolve[d] in June [of 2005]." Exhibit P. Also, upon learning of the Government's rejection of the September 28, 2005, counteroffer, Exhibits I/J, Aswege stated in message left in Breckenfelder's answering machine that he was ready to "give [the Government] what they wanted." Exhibit L; Declaration of Aswege at 2, ¶13; Declaration of Vescolani at 1-2, ¶¶ 5-6.

From the evidence it is obvious that but for Breckenfelder's failure to inform Aswege of the nature of the Government's offer of September 2, 2005, and the consequences if the offer were not accepted, Aswege would have agreed to the settlement offer. Counsel's omission led to the forfeitures hearing, where Aswege was exposed to, and actually was deprived of, a substantially larger portion of his property.

### Counsel's Failure to Follow Aswege's Instructions

As early as July 15, 2005, Aswege instructed Breckenfelder to negotiate a settlement to the forfeitures count. Exhibit C. In letter reviewed by Breckenfelder on that date, Exhibit B at 7, entry of 07/15/05, Aswege instructed Breckenfelder to inform the Government that he would be willing to "forf[e]it the Tahoe" and "60,000 in cash." Exhibit C. However, no such offer was

tendered, and no counteroffer was made by Breckenfelder until August 25, 2005, when a substantially lower offer was made. Exhibit D. Also, in a telephone message left on October 1, 2005, Aswege instructed Breckenfelder to either "give [the Government] what they want" or to make a counteroffer of "60,000 and the two vehicles." Exhibit L. [6/] Neither the offer nor the acceptance of the Government's latest offer was made and only at the eleventh hour, the afternoon before the day of the forfeitures hearing, did Breckenfelder offer the Government to settle the forfeitures count for $60,000 and the two vehicles, an offer the Government rejected due to the cost already incurred in the preparation for the forfeitures hearing. Exhibit B at 12, entry of 10/12/05.

Breckenfelder's failure to communicate to the Government Aswege's expressed settlement offers brought Breckenfelder's performance "below an objective standard of reasonableness" expected of members of his profession. **Strickland, supra**, 466 U.S. at 688.

Although it is impossible to determine whether the Government would have accepted the offers Aswege instructed Breckenfelder to make at the time, where the offers are close enough to the Government's position, a settlement would have been within reach, hence, "there is a reasonable probability that the outcome would have been different." Id. at 694.

---

6/ This communication occurred after the Government rejected the offer to settle the forfeitures count made on September 28, 2005, offering to forfeit the Silverado and $50,000 in cash, Exhibits I and J, and refused to pursue further settlement negotiations. Exhibit B at 11, entry of 09/29/05.

## The Communications Breakdown

As above stated, starting just prior to the beginning of Aswege's trial, the relationship between Aswege and Breckenfelder began to breakdown. Declaration of Aswege at 1, ¶ 4; Exhibit B at 8, entry of 07/15/05 ("argument over facts and consequences"), at 9, entry of 09/15/05 ("argument; client is irrational—bringing up the past, unable to focus discussion on current decisions"), entry of 09/20/05 ("breakdown in communication and progress, offer to withdraw"); at 10, entry of 09/21/05 ("meeting with client: client is loud, accusing, aggressive, unable to focus decisions or conversation, much argument over progress, attorney conduct, etc." . . . "prepare: application and consent to withdrawal" . . . "revise: application to withdrawal").

The breakdown in the relationship-crescendo picked on September 21, 2005, when the argument got so violent that the Mercer County Sheriff Deputies had to intervene. Declaration of Aswege at 2, ¶ 9. This breakdown in communications was brought to this Court's attention through counsel's Motion to Withdraw and for Mental Evaluation, CR-43, and was discussed in camera. Minute Entry of September 22, 2005.

Moreover, on October 12, 2005, the Government made a last verbal settlement offer: $75,000 in cash and the two vehicles. Exhibit B at 12, entry of 10/12/05. This offer was good only for that day. **Ibid.** Although Breckenfelder travelled to Mercer County Jail, it can be inferred, to communicate the last-minute offer to Aswege, it seems that because of the breakdown in

communications, an argument between Breckenfelder and Aswege immediately ensued, before Breckenfelder could communicate the Government's latest offer, and the "meeting ended" at that point. **Ibid.** Aswege did not learn about the Government's third offer until after the forfeitures hearing. Declaration of Aswege at 3, ¶13.

Of course, the mere fact of "a criminal defendant's loss of confidence in counsel does not, in and of itself, require the court to assign a new one." **United States v. Porter**, 924 F.2d 395, 398 (1st Cir. 1991), citing **McKee v. Harris**, 649 F.2d 927, 932 (2nd Cir. 1981), cert. denied, 456 U.S. 917 (1982). Nor does "a personal conflict, in and of itself, show ineffective assistance." **Porter, supra**, 924 F.2d at 398. Rather, the "appropriate inquiry focuses in the adversarial process, not on the accused's relationship with his lawyer as such." **United States v. Cronic**, 466 U.S. 648, 657 n.21 (1984). Thus, the legal question of whether counsel rendered ineffective assistance focuses on his performance, not on his client's expressions of dissatisfaction. **Ibid.**

In this case, the communications' breakdown resulted in prejudice to Aswege. As Breckenfelder states in his letter addressed to Aswege, dated September 20, 2005, "[t]he forfeiture case negotiations suggest that a reasonable agreement was close at the time our communications broke down. Time for settlement of your forfeiture has expired as we were unable to discuss simple financial considerations by telephone in a rational manner." Exhibit H at 2, ¶1.

Although the September 2, 2005, offer, to which the September 20, 2005, letter referred to, was not the last offer to settle the forfeitures count, the breakdown in communications between Aswege and Breckenfelder remained an insurmountable obstacle that made impossible any further meaningful attempts at a negotiated settlement. Declaration of Aswege at 2, ¶11.

In light of the above, Aswege has satisfied both prongs of the **Strickland** test: Breckenfelder's performance "fell below an objective standard of reasonableness," **id.**, 466 U.S. at 688, where, because of the breakdown in communications, he was unable to represent Aswege's interests, and as a result of Breckenfelder's shortcoming, "there is a reasonable probability that the outcome" of the settlement negotiations "would have been different." **Id.** at 694.

## Conclusion

Aswege has made a sufficient showing that his attorney, Ted Breckenfelder, failed to perform as expected of a member of his profession during the forfeitures settlement negotiations. This resulted in Aswege's prejudice where no settlement agreement was reached, and the Government obtained forfeiture of 'all assets at issue to the fullest extent provided by the law.'

The remedy to such constitutional violation is to "put [Aswege] in the position he would have been in had he received effective assistance of counsel." **Kimmelman, supra,** 477 U.S. at 379.

WHEREFORE, Aswege prays that this Court will grant his Petition for Writ of Coram Nobis; makes a finding that attorney Breckenfelder rendered constitutionally defective assistance during the forfeitures count settlement negotiations; vacates the judgment entered on October 31, 2005, with respect to the forfeitures count; and places the parties in the position they were when the constitutional violation occurred.

Respectfully submitted,

Date: June 24, 2007

*Gerald Aswege*
Gerald M. Aswege
In Pro Se